[No. 76458-1.   En Banc.]
Argued November 9, 2005.     Decided June 29, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. RICKO FERNANDEZ EASTERLING, *Petitioner*.

Elaine L. Winters (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *David M. Seaver, Deputy*, for respondent.

¶1 ALEXANDER, C.J. — Ricko Easterling seeks reversal of his conviction on one count of unlawful delivery of cocaine. He asserts that the trial court's decision to close the courtroom at the request of his codefendant during pretrial motions on the day of their joint trial violated his constitu-

tional right to a public trial and/or his constitutional right to be present at all critical stages of his criminal proceeding. Although the State acknowledges the improper closure of the courtroom, it argues that the closed proceedings related to the codefendant's, not Easterling's, trial and, therefore, Easterling's public trial right was not violated. In addition, the State asserts that Easterling had no right to be present during closed court consideration of pretrial motions made by the codefendant because consideration of these motions did not constitute a "critical stage" of Easterling's trial.

¶2 We conclude that the trial court committed an error of constitutional magnitude when it directed that the courtroom be fully closed to Easterling and to the public during the joint trial without first satisfying the requirements set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). The trial court's failure to engage in the required case-by-case weighing of the competing interests prior to directing the courtroom be closed rendered unfair all subsequent trial proceedings. Consequently, we reverse Easterling's conviction and remand for a new trial. In light of our holding, we decline to reach the question of whether Easterling's constitutional right to be present at a critical stage of the criminal proceeding against him was also violated.

I

¶3 On January 11, 2003, Seattle police arrested Easterling, Anthony Jackson, and Shawn Modest during a so-called illegal drug "buy-bust" operation. Clerk's Papers at 40. The three men were each thereafter charged in King County Superior Court with one count of unlawful delivery of cocaine in violation of the Uniform Controlled Substances Act, former RCW 69.50.401(a)(1)(i) (1998).

¶4 Easterling and Jackson were scheduled to be tried together. On the first day of trial, during pretrial motions, Jackson's counsel moved to sever Jackson's trial from Easterling's trial. Easterling was present, but he did not

join Jackson's severance motion, nor did he file his own motion for severance.

¶5 Jackson combined his motion to sever with a motion to dismiss. Jackson's attorney alleged that the charge against Jackson should be dismissed because the State had unfairly conducted pretrial negotiations and that the prosecutor had "sandbagged" his client by misleading him during plea negotiations. Verbatim Report of Proceedings (VRP) (July 14, 2003) at 26. The trial court indicated that Jackson's belief that his case had not been fairly negotiated did not provide a sufficient basis to grant the severance motion. Jackson's attorney responded that he wanted to argue the motions further but was reluctant to discuss the specifics in open court and in front of Easterling, in particular.

¶6 Without seeking or receiving the State's or Easterling's input or objection, the trial court ordered the courtroom cleared and specifically directed Easterling, his attorney, and others to leave. The deputy prosecuting attorney, court personnel, Jackson, and Jackson's attorney were, however, allowed to remain. The record of the closed proceedings was ordered sealed.[1]

¶7 During the closed courtroom proceeding, Jackson's counsel again asserted that the State had misled him and his client during plea negotiations by promising, and then withdrawing without notice, a reduced charge in exchange for a guilty plea and a promise to testify against Easterling. The trial court asked if further plea negotiations would be fruitful. When counsel for the State and Jackson agreed that negotiations could be helpful, the trial court indicated that it would take its morning break and ordered that the negotiations take place in the closed courtroom during the recess. An agreement was thereafter reached between respective counsel.

¶8 When court reconvened later that afternoon, Jackson pleaded guilty, pursuant to the negotiated plea agreement,

---

[1] The record of the closed proceedings was unsealed by order of the trial court in March 2004.

to an amended and reduced charge of solicitation to deliver cocaine. The State also agreed to dismiss an unrelated possession of cocaine charge. Significantly, in return, Jackson agreed to testify against Easterling. As a result of the plea agreement, the State altered its theory against Easterling. The trial court then excused Jackson from the ongoing proceedings without having ruled on his motions to dismiss and to sever.

¶9 The trial proceeded against Easterling alone. Jackson testified against Easterling and, ultimately, a jury convicted Easterling of the charge of unlawful delivery of cocaine. On appeal to Division One of the Court of Appeals, Easterling claimed ineffective assistance of trial counsel and that the trial court erred in limiting his cross-examination of Jackson. The Court of Appeals affirmed Easterling's conviction in an unpublished opinion, *State v. Easterling*, noted at 124 Wn. App. 1019 (2004).

¶10 In a petition for review filed here, Easterling reasserted his confrontation claim. He also contended, for the first time, that because of the courtroom closure, he had been deprived of his constitutional right to be present at his trial and/or his constitutional right to an open public trial.[2] Despite the State's vigorous objections to the contrary in its answer to Easterling's petition, we granted review, but only on the closed courtroom issue.

II

¶11 We are first tasked with determining if the trial court's decision to close the courtroom to Easterling, his counsel, and to all members of the public during consideration of the codefendant's motion to sever and to dismiss violated Easterling's and/or the public's constitutional right to a "public trial." Whether a criminal accused's

---

[2] Easterling asserts a constitutional error. We have the discretion to review an issue raised for the first time on appeal when it involves a "manifest error affecting a constitutional right." RAP 2.5(a); *see* RAP 13.4. A criminal accused's rights to a public trial and to be present at his criminal trial are issues of constitutional magnitude that may be raised for the first time on appeal. *See In re Pers. Restraint of Orange*, 152 Wn.2d 795, 800, 100 P.3d 291 (2004); *Bone-Club*, 128 Wn.2d at 257.

constitutional public trial right has been violated is a question of law, subject to de novo review on direct appeal. *Bone-Club*, 128 Wn.2d at 256. The presumptive remedy for a public trial right violation is reversal and remand for a new trial. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004).

¶12 Article I, section 22 of the Washington Constitution and the sixth amendment to the United States Constitution each guarantee a criminal defendant a right to a public trial. Additionally, article I, section 10 of the Washington Constitution provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This latter provision gives the public and the press a right to open and accessible court proceedings. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36, 640 P.2d 716 (1982).

¶13 The public trial right extends beyond the taking of a witness's testimony at trial. It extends to pretrial proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (public trial right extends to preliminary hearing); *Orange*, 152 Wn.2d at 812 (public trial right extends to voir dire); *Bone-Club*, 128 Wn.2d at 257 (public trial right extends to pretrial suppression hearing). The public's constitutional right to the open administration of justice under article I, section 10 extends to pretrial motions to dismiss. *Ishikawa*, 97 Wn.2d at 36.

¶14 This court has strictly watched over the accused's and the public's right to open public criminal proceedings.[3] As we plainly stated in *Bone-Club*, "[a]lthough the public trial right may not be absolute,[4] protec-

---

[3] *See State v. Brightman*, 155 Wn.2d 506, 509, 122 P.3d 150 (2005) (trial court erred by closing courtroom during jury selection); *Orange*, 152 Wn.2d at 812 (trial court erred by closing courtroom during voir dire); *Bone-Club*, 128 Wn.2d at 256 (trial court erred by closing courtroom during suppression hearing); *Ishikawa*, 97 Wn.2d at 37-39 (trial court's denial of access to hearing and records violated article I, section 10).

[4] The presumption in favor of keeping a courtroom open " 'may be overcome only by an overriding interest based on findings that closure is essential to preserve

tion of this basic constitutional right clearly calls for a trial court *to resist a closure motion except under the most unusual circumstances." Bone-Club*, 128 Wn.2d at 259 (emphasis added). In order to protect the accused's constitutional public trial right, a trial court may not close a courtroom without, first, applying and weighing five requirements as set forth in *Bone-Club* and, second, entering specific findings justifying the closure order. *Bone-Club*, 128 Wn.2d at 258-59 (citing *Ishikawa*, 97 Wn.2d at 37). These requirements mirror the requirements applied to protect the public's article I, section 10 right to open proceedings.[5]

¶15 The State does not dispute the fact that the trial court fully closed the courtroom to consider Jackson's motions or that Easterling, his attorney, and the public were excluded from this closed proceeding.[6] Furthermore, it does not deny that the trial court's decision to close the courtroom to hear Jackson's motions did not comport with the *Bone-Club* requirements and was not accompanied by

---

higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.' " *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).

[5] The requirements are:

"1. The proponent of closure . . . must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)); *Orange*, 152 Wn.2d at 806-07.

[6] In addition to the State's concession, the record shows that the trial court asked that it be noted on the record when the "closed proceeding" began and that the record reflect the only people in the courtroom at the time were Jackson, his attorney, the "State's representation," the court staff, and court security officers. VRP (July 14, 2003) at 42.

specific findings.[7] Rather, the State contends that Easterling's public trial guaranty was not implicated by the improper closure because the pretrial motions made by the codefendant Jackson did not pertain to Easterling's trial and/or that the courtroom closure was too trivial as to not even implicate the constitutional right to a public trial.[8] We address these arguments in turn.

A. Was Easterling's constitutional right to a public trial violated?

¶16 The State argues that though Jackson's and Easterling's cases were joined, the proceedings in question related to Jackson's requests to sever and dismiss and, thus, were not a part of Easterling's trial. It reasons that Easterling's public trial right was not violated, even in the face of an improper courtroom closure, because it was Jackson's public trial right that was then at issue, and Jackson's attorney waived that right by requesting the closed proceeding. In response, Easterling asserts that the trial court's decision to close the courtroom and to entertain a codefendant's motions to sever and dismiss during a closed, sealed proceeding were necessarily a part of his trial. Easterling asserts that this is because Jackson's

---

[7] The record shows that Jackson's attorney requested a closed hearing or a side bar to discuss the State's alleged bad faith plea negotiations and the motions in question. In response, the trial court indicated it would not hold an in-chambers conference, but would grant the request to close so long as there was a sealed record of the closed proceedings. Then, in derogation of *Bone-Club*, the trial court closed the courtroom without making specific findings on the record, without asking Easterling, his attorney, or the State whether they objected, and without weighing either the public's or Easterling's interest in keeping the courtroom proceedings open against Jackson's interest in closing the proceedings.

[8] The State argues, additionally, that Easterling's failure to object at trial to the courtroom closure served as a waiver of his right to appeal the improper closure. The State's waiver argument is without merit. This court has explicitly held that a defendant does not waive his right to appeal an improper closure by failing to lodge a contemporaneous objection. *Brightman*, 155 Wn.2d at 514-15 (defendant's failure to object at trial to improper courtroom closure does not effect a waiver, and does not free the reviewing court from having to consider the defendant's right to a public trial); *Bone-Club*, 128 Wn.2d at 257. Additionally, under the *Bone-Club* criteria, the burden is placed upon the trial court to seek the defendant's objection to the courtroom closure. The record in this case shows that the trial court did not affirmatively provide Easterling with such an opportunity.

motions were made prior to severance and directly impacted the posture, if not the substance, of the State's case against him.

¶17 We agree with both parties that this case does present a unique situation. In *Bone-Club*, the party requesting closure was the State. In *Orange* and *State v. Brightman*, 155 Wn.2d 506, 122 P.3d 150 (2005), we were confronted with cases where the trial court had ordered closure sua sponte. In all three cases, a single defendant was being tried. Those cases presented clear cut facts which compelled us to hold that the improper closure violated the affected defendant's right to a public trial. In this case, a codefendant requested the courtroom closure, and there was no objection from the State or the complaining defendant, Easterling. Neither the State nor Easterling cite to any precedent from this State or other jurisdictions indicating whether or not a codefendant's pretrial motions implicate the other codefendant's public trial right. The State briefly argues that the joinder rules under CrR 4.3[9] do not compel that result, but a review of these rules does not lend support to the State's position.

¶18 Due to the lack of precedent on this narrow issue, we rely heavily upon our prior decisions relating to article I, section 22 of our state constitution, which require trial courts to strictly adhere to the well-established guidelines for closing a courtroom, and upon public policy as made manifest by the federal and state constitutions which favors keeping criminal judicial proceedings open to the public unless there is a compelling interest warranting closure. *Accord Brightman*, 155 Wn.2d 506; *Orange*, 152 Wn.2d 795; *Bone-Club*, 128 Wn.2d 254. In light of these precedents, we conclude that Jackson's motion to sever his trial from Easterling's pertained to Easterling's trial and thereby implicated his right to a public trial under the Washington Constitution. We hold, additionally, that the trial court committed reversible error by fully closing the courtroom to Easterling and the public.

---

[9] CrR 4.3: Joinder of Offenses and Defendants.

¶19 Our holdings are compelled by the record, which demonstrates that Easterling and Jackson were charged together pursuant to the same information and were being jointly tried at the time of the courtroom closure. The record shows also that the request to close the courtroom and the closed proceeding itself were necessarily a part of Easterling's trial because they involved a motion to sever Easterling's case from Jackson's and a motion to dismiss one party from the joint criminal proceeding. The joint proceedings terminated only when Jackson reached a plea agreement with the State and agreed to testify against Easterling—a point in time after the trial court closed the courtroom to the public and to Easterling and after the closed proceeding was held.

¶20 Our holding is further dictated by our interest in protecting the transparency and fairness of criminal trials by ensuring that all stages of courtroom proceedings remain open unless the trial court identifies a compelling interest to be served by closure. The record here demonstrates that the trial court closed the courtroom to consider Jackson's pretrial motions without identifying any interest justifying closure of the courtroom.[10] This action undermined the fairness of the process by precluding Easterling from arguing for or against the motion to sever during the subsequent closed proceeding. We conclude that this impact upon the posture of Easterling's case warrants our holding that Jackson's motions and the proceedings relating to them were a part of Easterling's trial, thereby implicating his public trial rights.

---

[10] The record shows that when Jackson's attorney asked for a closed hearing, the only interest he identified to justify the closure was his reluctance to discuss his client's previous plea negotiations with the State in open court, and in front of Easterling. Under the first *Bone-Club* "factor," the trial court must find that the proponent of closure, Jackson in this case, made a showing that the courtroom closure was necessary to protect his right to a fair trial or made a showing of a separate compelling interest. The trial court closed the courtroom without making this required determination.

B. Was the public's constitutional right to an open public trial violated?

¶21 Were we to conclude that the closure did not violate Easterling's constitutional right to a public trial, the trial court's failure to comply with *Bone-Club* still constitutes a violation of the public's right under article I, section 10 of our state constitution to an open public trial, which exists separately from Easterling's right. *Accord Press-Enterprise Co.*, 478 U.S. at 7 (the right to an open public trial is a shared right of the accused under the Sixth Amendment and the public under the First Amendment, the common concern being the issue of fairness). We come to this conclusion because the record plainly shows the trial court specifically excluded the public from the closed courtroom hearing. This decision to close a part of a criminal trial to the public runs afoul of the article I, section 10 guaranty of providing open access to criminal proceedings. It also runs contrary to this court's consistent position of strictly protecting the public's and the press's right to view the administration of justice. *Accord Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 848 P.2d 1258 (1993); *Ishikawa*, 97 Wn.2d 30.

¶22 The State correctly points out that the public's exclusion from a criminal proceeding does not always amount to finding constitutional error. However, contrary to what case law and constitutional protections required, the trial court erred when it neither identified a compelling interest warranting the public's exclusion from the pretrial process nor made specific findings that showed it weighed the competing interest of Jackson as the proponent of closure against the public's interest in maintaining unhindered access to judicial proceedings. *Accord Orange*, 152 Wn.2d at 800 (absent a closure order narrowly drawn to protect a clearly identified interest, a trial court may not exclude the public or press from any stage of a criminal trial).

¶23 In sum, we conclude that the closed proceeding did pertain to, and was a part of, Easterling's trial. The record shows the trial court closed the courtroom to Easterling and

to the public prior to severance of the joint proceeding, necessarily impacting the posture and fairness of Easterling's trial. Further, contrary to what the State would have us hold, we do not believe that either a criminal defendant's or the public's right to a public trial is waived simply because a codefendant in a joint criminal trial requested the courtroom closure. It was the request to close itself, and not the party who made the request, that triggered the trial court's duty to apply the five-part *Bone-Club* requirements. The trial court's failure to apply that test constitutes reversible error.

## C. Was the courtroom closure error de minimis?

¶24 The State would have us hold that no infringement on the right to public trial occurs when a closure is, as they contend this closure was, de minimis.[11] In support of that position, the State cites to *Orange*, in which a concurring and a dissenting justice posited that some unjustified courtroom closures may be so "trivial" that they would not implicate the right to a public trial. *Orange*, 152 Wn.2d at 824-28. The State also points to *Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir. 1996), a case in which a federal appeals court found that the inadvertent closure of a courtroom for a brief period of time was "too trivial" to constitute a constitutional violation. Although the State and Justice Madsen correctly note that other jurisdictions have determined that improper courtroom closures may not necessarily violate a defendant's public trial right, a majority of this court has never found a public trial right violation to be de minimis.[12] Even if we were to indicate a tolerance for so-

---

[11] The State is correct that had Jackson and Easterling's trial been severed prior to the courtroom closure or had the cases not been joined initially, the courtroom closure would have had no impact on the fairness of Easterling's case. Furthermore, had the prosecuting attorney and Jackson's attorney met in the hallway, rather than in the closed courtroom during a closed proceeding, to discuss the plea agreement, neither the public's nor Easterling's public trial rights would have been implicated. However, such is not the factual scenario presented in this case, and we decline to base our decision upon purely speculative facts.

[12] A majority of cases relied upon by Justice Madsen applying the de minimis analysis are federal cases. Concurrence at 182-85. Application of this "triviality"

called "trivial closures," the closure here could not be placed in that category because it was deliberately ordered and was neither ministerial in nature nor trivial in result.

¶25 The denial of the constitutional right to a public trial is one of the limited classes of fundamental rights not subject to harmless error analysis. *See Bone-Club*, 128 Wn.2d at 261-62; *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). Prejudice is necessarily presumed where a violation of the public trial right occurs. *Bone-Club*, 128 Wn.2d at 261-62 (citing *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923)). As a result, precedent directs that the appropriate remedy for the trial court's constitutional error is reversal of Easterling's unlawful delivery of cocaine conviction and remand for new trial.

## III

¶26 Easterling makes an additional argument that the trial court's decision to close the courtroom infringed on his constitutional right to be present at all critical stages of his trial. Article I, section 22 of the Washington Constitution provides that a criminal defendant has the right to "appear and defend in person [and] to meet the witnesses against him face to face." *See In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (the core of the right to be present is when evidence is presented). The right to be

standard may be appropriate where a federal court room is fully closed because the United States Constitution, unlike our state constitution, does not contain the open administration of justice in all cases requirement that is contained in article I, section 10 of our state's constitution. Thus, arguably, there is room for concluding that a public trial right violation is de minimis or trivial where only a violation of the Sixth Amendment is asserted. But, such is not the case here where a violation of two separate provisions of our state constitution were alleged and one of this state's courtrooms was fully closed to the public and to the defendant. In addition, there will be no need for Washington's appellate courts to engage in a triviality-type analysis if our trial courts correctly apply the *Bone-Club* guidelines in the first instance. So long as a trial court applies the required factors and makes findings on the record, a reviewing court, such as this one, will not have to determine whether a complete courtroom closure was too trivial to even implicate the public trial right as the question on review will focus, instead, on whether the trial court's decision to close was "justified."

present is also protected by court rule. CrR 3.1(a), (b); CrR 3.4(a).

¶27 Because we resolve this case by concluding that the trial court's improper courtroom closure infringed on Easterling's constitutional right to a public trial, we decline to reach this separate constitutional question.

## IV

¶28 It is undisputed in this case that the trial court closed the courtroom to the public and to Ricko Easterling during consideration of a codefendant's motions for severance and dismissal. It is also not disputed that the trial court failed to comply with the *Bone-Club* closure requirements before ordering the courtroom closure. Because we conclude that a defendant's right to a public trial extends to courtroom consideration of pretrial motions made prior to severance by a criminal codefendant, we hold that Easterling's constitutional right to a public trial under section 22 and the public's section 10 open access to justice right were violated by the improper closure. The appropriate remedy for this error of constitutional magnitude is reversal of the conviction and remand for proceedings consistent with this opinion.

C. JOHNSON, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶29 MADSEN, J. (concurring) — I concur in the majority but write separately to discuss further the de minimis closure standard, why it comports with the law regarding the constitutional right to a public trial, and why it may apply in a future case.

¶30 Recently the court observed that "a trivial closure does not necessarily violate a defendant's public trial right." *State v. Brightman*, 155 Wn.2d 506, 517, ¶ 19, 122 P.3d 150 (2005). While the State's argument that the de minimis standard should be applied here does not prevail on these

facts, it is important to bear in mind that the de minimis or trivial trial closure standard may be applied in a future case and permit avoidance of a constitutionally unnecessary retrial when a defendant's right to a public trial has not been violated.[13]

¶31 As many courts have recognized, a "de minimis" closure standard applies when a trial closure is too trivial to implicate the constitutional right to a public trial. The de minimis standard refers to a courtroom closure that is "too trivial to implicate the Sixth Amendment guarantee," i.e., no violation of the right to a public trial occurred at all. *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003); *see also Braun v. Powell*, 227 F.3d 908, 918 (7th Cir. 2000) ("there are certain instances in which the exclusion [of persons from the courtroom] cannot be characterized properly as implicating the constitutional guarantee"); *Carson v. Fischer*, 421 F.3d 83, 92 (2d Cir. 2005) ("[e]ven an unjustified closure may, in some circumstances, be so trivial as not to implicate the right to a public trial"); *People v. Webb*, 267 Ill. App. 3d 954, 959, 642 N.E.2d 871, 205 Ill. Dec. 6 (1994) ("the defendant's right to a public trial was not violated" by a de minimis closure); *People v. Woodward*, 4 Cal. 4th 376, 384-86, 841 P.2d 954, 14 Cal. Rptr. 2d 434 (1992) (applying the "de minimis rationale" and concluding that the right to a public trial was not violated); *State v. Lindsey*, 632 N.W.2d 652, 660-61 (Minn. 2001) (applying a "triviality standard" and concluding that no violation of the right to a public trial occurred); *State v. Torres*, 844 A.2d 155, 162 (R.I. 2004) (recognizing "that the Sixth Amendment is not violated every time the public is excluded from a courtroom"; "[a]n unjustified closure may, on its facts, be so trivial as not to violate the Sixth Amendment guarantee").

¶32 Critically, courts that have found a closure to be de minimis or too trivial to constitute a violation of the right to a public trial have done so after weighing the closure against the values advanced by the right. That is, whether

---

[13] *See* CONST. art. I, § 22; U.S. CONST. amend. VI; *see also* CONST. art. I, § 10.

a particular closure implicates the constitutional right to a public trial is determined by inquiring whether closure has infringed the "values that the Supreme Court has said are advanced by the public trial guarantee: '1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury.' " *Carson*, 421 F.3d at 93 (quoting *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996) (citing *Waller v. Georgia*, 467 U.S. 39, 46-47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984))). This analysis tends to safeguard the right at stake without requiring new trials where these values have not been infringed by a trivial closure.

¶33 Thus, where the de minimis or trivial closure standard applies, no violation of the right to a public trial has occurred.

¶34 The standard has been applied both in cases where the courtroom closure was deliberate, and in cases where it was inadvertent. Numerous appellate courts have applied the de minimis or trivial closure standard when reviewing intentional closures, i.e., closures that resulted from deliberate acts of trial courts. *See, e.g., Carson*, 421 F.3d at 91-95 (Second Circuit; trial court excluded defendant's mother-in-law from the courtroom during the testimony of a confidential informant); *Braun*, 227 F.3d at 917-20 (Seventh Circuit; trial court excluded one spectator from the courtroom—a former member of the jury venire who was not selected as juror); *Ivester*, 316 F.3d at 959-60 (Ninth Circuit; trial court excluded spectators from courtroom during questioning of jury about safety concerns); *Woodward*, 4 Cal. 4th at 384-86 (trial court permitted bailiff to lock courtroom doors and post sign, which read "[t]rial in progress—[p]lease do not enter" and listed break times, during prosecutor's closing argument); *Lindsey*, 632 N.W.2d at 659-61 (trial court excluded two minors from courtroom); *State v. Shaw*, 619 S.W.2d 546, 548 (Tenn. Crim. App. 1981) (courtroom closed during closing arguments to prevent people who would be arriving for judge's daily calendar call from distracting from arguments).

¶35 Courts have also applied the standard when reviewing cases where the closure was inadvertent. *See, e.g.,* *Peterson,* 85 F.3d 39 ; *Snyder v. Coiner,* 510 F.2d 224, 230 (4th Cir. 1975); *United States v. Al-Smadi,* 15 F.3d 153 (10th Cir. 1994); *Blackwell v. State,* 1983 OK Cr 51, 663 P.2d 12, 17.

¶36 Courts must carefully safeguard a defendant's right to a public trial. However, not every courtroom closure constitutes a violation of the public trial right. Depending upon the factual circumstances in a case, a closure may be so trivial that the defendant's right to a public trial is not implicated.

¶37 CHAMBERS, J. (concurring) —

"Justice in all cases shall be administered openly. . . ." CONST. art. I, § 10. The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history. The right of the public, including the press, to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified.

*Dreiling v. Jain,* 151 Wn.2d 900, 903-04, 93 P.3d 861 (2004). Our constitution requires that justice be administered openly in court*rooms* just as much as it must be reflected in open court *records*. Fidelity to the constitution requires some meaningful remedy if a courtroom is improperly closed.

¶38 Washington jurisprudence provides a meaningful remedy: reversal and a new trial. *In re Pers. Restraint of Orange,* 152 Wn.2d 795, 814, 100 P.3d 291 (2004); *State v. Marsh,* 126 Wash. 142, 146-47, 217 P. 705 (1923). "[O]ur duty under the constitution is to ensure that, absent a closure order narrowly drawn to protect a clearly identified compelling interest, a trial court may not exclude the public

or press from any stage of a criminal trial." *Orange*, 152 Wn.2d at 800.

¶39 I write separately to respond to Justice Madsen's contention that some courtroom closures deserve no remedy because the violation is de minimis. I completely agree with Justice Madsen that there may be a case, there may be many cases, where substantive justice to the parties was done behind locked doors. Defendants themselves might even want the courtrooms closed for many rational reasons. But whether or not the defendant got due process of law is a completely different question from whether our article I, section 10 was violated. While a defendant may not herself be harmed by a hearing in a closed courtroom, there is no case where the harm to the principle of openness, as enshrined in our state constitution, can properly be described as de minimis. Thus, I cannot agree that there could ever be a proper exception to the principle that a courtroom may be closed without a proper hearing and order. *See Orange*, 152 Wn.2d at 806-07.

¶40 Our founders were smart. They knew that " '[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance.' " *In re Oliver*, 333 U.S. 257, 271, 68 S. Ct. 499, 92 L. Ed. 682 (1948) (quoting 1 JEREMY BENTHAM, RATIONALE OF JUDICIAL EVIDENCE 524 (1827)). Judicial secrecy, however manifested, must be resisted.

¶41 I recognize that this is an unusual circumstance. In this case, Ricko Easterling's codefendant, Anthony Jackson, asked to have the courtroom closed and journalists excluded during Jackson's own last minute attempt to have charges dismissed or a plea agreement negotiated. All agree that the closure was improper; the only question before this court is whether Easterling is entitled to a remedy. The State argues that either the courtroom closure was not

relevant to Easterling or that the harm to his rights was too trivial for relief.

¶42 But the constitutional requirement that justice be administered openly is not just a right held by the defendant. It is a constitutional obligation of the courts. It is integral to our system of government.[14] Open justice is just too important to our constitution and our state to allow us to look for reasons to turn a blind eye to improperly locked courtroom doors. When the courtroom doors are locked without a proper prior analysis under *Orange* and *State v. Bone-Club,* 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), the people deserve a new trial.

¶43 I respectfully concur.

SANDERS and OWENS, JJ., concur with CHAMBERS, J.

---

[14] As our predecessors said long ago:

" 'I cannot accede to the correctness of the proposition intimated in that case,—that, if a public trial has not been accorded to the accused, the burden is upon him to show that actual injury has been suffered by a deprivation of his constitutional right. On the contrary, when he shows that his constitutional right has been violated, the law conclusively presumes that he has suffered an actual injury. I go further, and say that the whole body politic suffers an actual injury when a constitutional safeguard erected to protect the rights of citizens has been violated in the person of the humblest or meanest citizen of the state. The constitution does not stop to inquire of what the person has been accused, or what crime he has perpetrated; but it accords to all, without question, a fair, impartial, and public trial.' "

*Marsh,* 126 Wash. at 146-47 (quoting *People v. Yeager,* 113 Mich. 228, 230, 71 N.W. 491 (1897) (quoting *People v. Murray,* 89 Mich. 276, 290, 50 N.W. 995 (1891))).