IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 25006-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM J. KRAMER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — William Kramer appeals his conviction for first degree child molestation with a persistent offender status. He contends that his right to a public trial was violated when the trial court allowed private, in chamber questioning of jurors without first conducting a *Bone-Club*[1] inquiry. We agree and, therefore, reverse his conviction and remand for a new trial.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

## FACTS

We recite the facts necessary to address Mr. Kramer's public trial challenge only. While Mr. Kramer raises additional contentions in his appeal, review of those issues is not necessary. Our decision on the violation of his right to a public trial is dispositive.

Mr. Kramer was charged by amended information with one count of first degree child molestation. At a pretrial hearing, the trial court addressed the individual questioning of jurors in chambers. The court explained that some jurors would be called into chambers for an in camera hearing to discuss their answer to a question on the juror questionnaire concerning sexual abuse. The question was asked, "if you or [a] close friend or relative had a similar experience, either as the accused or victim or witness." Report of Proceedings (Jan. 18, 2006) at 34. The court asked the State and defense counsel if the process was agreeable. Both parties consented.

Around one week later, 30 individual jurors who answered the above question in the affirmative were questioned in chambers. Both parties participated in the process. Before questioning took place, the trial court informed the jury pool in open court that it would be calling jurors into chambers one at a time. The court did not conduct a *Bone-Club* analysis prior to individual interviews in chambers. After the individual questioning was completed, the venire jurors were questioned in open court.

2

No. 25006-7-III
*State v. Kramer*

The jury found Mr. Kramer guilty of first degree child molestation. The court sentenced Mr. Kramer to life in prison without the possibility of parole due to his persistent offender status.

Mr. Kramer appealed to this court in 2006, claiming among other errors, that his right to a public trial was violated when the trial court allowed individual voir dire in chambers. We stayed his appeal pending a decision by the Supreme Court in *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014). We lifted the stay subsequent to the recent decision. We now address his appeal.

## ANALYSIS

Review of a defendant's public trial right challenge on direct appeal is a question of law that receives de novo review. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to a public trial. *State v. Njonge*, 181 Wn.2d 546, 553, 334 P.3d 1068, *cert. denied*, 135 S. Ct. 880, 190 L. Ed. 2d 711 (2014). However, the right to a public trial is not absolute. *Id.* A trial court may close a courtroom to the public if it finds the closure is justified. *Id.* Prior to closure, the

3

trial court must balance several factors on the record by conducting a *Bone-Club* analysis. *Id.*

"*Bone-Club* requires that trial courts at least: name the right that a defendant and the public will lose by moving the proceedings into a private room; name the compelling interest that motivates the closure; weigh these competing rights and interests on the record; provide the opportunity for objection; and consider alternatives to closure, opting for the least restrictive." *State v. Wise*, 176 Wn.2d 1, 10, 288 P.3d 1113 (2012).

A defendant's right to a public trial applies to jury selection. *Id.* at 11. "[T]he public trial right in voir dire proceedings extends to the questioning of individual prospective jurors." *Id.* The private questioning of individual jurors in chambers is a courtroom closure that requires a *Bone-Club* analysis before questioning occurs. *Id.* at 11-12.

It is the trial court's responsibility to weigh the *Bone-Club* factors and enter specific findings to support the closure. *Bone-Club*, 128 Wn.2d at 260-61. On appeal, "[w]e do not comb through the record or attempt to infer the trial court's balancing of competing interests where it is not apparent in the record." *Wise*, 176 Wn.2d at 12-13.

A trial court's failure to give any consideration to the *Bone-Club* factors before closing a courtroom for voir dire is a structural error that is presumed to be prejudicial.

4

*Wise*, 176 Wn.2d at 14.[2] An improper courtroom closure violates the fundamental

constitutional right to a public trial and is not subject to a harmless error analysis. *State v.*

*Easterling*, 157 Wn.2d 167, 181-82, 137 P.3d 825 (2006). We do not consider this kind

of public trial right violation to be de minimis or trivial. *Id.* at 180-81. "[W]e cannot

know what the jurors might have said differently if questioned in the courtroom; what

members of the public might have contributed to either the State's or defense's jury

selection strategy; or, if the judge had properly closed the court under a *Bone-Club*

analysis, what objections, considerations, or alternatives might have resulted and

yielded." *Wise*, 176 Wn.2d at 18.

A defendant's failure to object to a public trial violation does not preclude

appellate review under RAP 2.5. *State v. Paumier*, 176 Wn.2d 29, 36, 288 P.3d 1126

(2012). The improper closure of the courtroom during voir dire is presumed to be

prejudicial to the defendant and, correspondingly, is a manifest error affecting a

---

[2] *But see State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009) where the voir dire courtroom closure without a *Bone-Club* analysis was not considered a structural error because the trial court effectively considered the *Bone-Club* factors and the defendant was an active proponent of the closure. "At bottom, *Momah* presented a unique confluence of facts: although the court erred in failing to comply with *Bone-Club*, the record made clear—without the need for post hoc rationalization—that the defendant and public were aware of the rights at stake and that the court weighed those rights, with input from the defense, when considering the closure." *Wise*, 176 Wn.2d at 14-15.

constitutional right. *Id.* at 36-37. Similarly, a defendant's failure to object at trial does not equate to a waiver of his right to a public trial. *Brightman*, 155 Wn.2d at 514-15.

A defendant may affirmatively waive his right to a public trial if the waiver is knowingly, voluntarily, and intelligently given. *Frawley*, 181 Wn.2d at 461-62 (plurality opinion). A valid waiver can occur in the absence of a *Bone-Club* analysis. *Id.* at 467 (plurality opinion) (Stephens, J., concurring, with seven concurring and dissenting justices in agreement). The Washington Supreme Court has not agreed on the standard or process for ensuring that a defendant's waiver is knowing, voluntary, and intelligent, but the prevailing opinion is that waiver "can be met without the same type of 'on-the-record colloquy' that waiver of other rights (like the right to counsel) requires." *Id.* at 473. Still, a valid wavier will not be found if the record presents no evidence that the defendant knew that he was waiving his right to a public trial, understood what the right entailed, and voluntarily agreed to waive his right. *State v. Shearer*, 181 Wn.2d 564, 575-76, 334 P.3d 1078 (2014) (plurality opinion) (McCloud, J., concurring).

Here, Mr. Kramer's right to a public trial was violated. The trial court allowed private questioning of jurors in chambers. This courtroom closure occurred without first conducting a *Bone-Club* analysis. The trial court's failure to give any consideration to the *Bone-Club* factors before allowing private questioning is a structural error that is

6

presumed to be prejudicial to Mr. Kramer. Furthermore, there is no evidence in the record that Mr. Kramer knowingly, voluntarily, and intelligently waived his right to a public trial.

The appropriate remedy for a violation of a defendant's constitutional right to a public trial is reversal and remand for a new trial. *Easterling*, 157 Wn.2d at 182. "Although a new trial will undoubtedly place on the affected community an extremely difficult burden, a burden that will be particularly painful for the families and friends of the victims of the [crime] charged in this case, our duty under the constitution is to ensure that, absent a closure order narrowly drawn to protect a clearly identified compelling interest, a trial court may not exclude the public or press from any stage of a criminal trial." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 800, 100 P.3d 291 (2004). Accordingly, we reverse Mr. Kramer's conviction and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

7