IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38637-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FERNANDO SANTACRUZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J.P.T.* — Fernando Santacruz appeals his conviction of rape in the

third degree of his then-wife. He contends that an off-the-record, unmemorialized

sidebar taking place during trial was a public trial violation, and evidentiary error

occurred when a detective was permitted to testify about the "general response" of people

accused of sexual assault. He also challenges terms of the sexual assault protection order

(SAPO) entered by the court, which the State concedes will unduly interfere with Mr.

Santacruz's contact with his three minor children.

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

We deemed the record insufficient for us to determine whether the sidebar implicated Mr. Santacruz's public trial right and remanded for fact-finding by the trial court. Based on the facts found by the court, the sidebar addressed only a mundane scheduling matter, so no constitutional violation occurred. We agree with Mr. Santacruz that the objected-to testimony by the detective was irrelevant, but find its admission harmless. We accept the State's concession that the SAPO requires modification and remand for resentencing for that purpose. At resentencing, the trial court shall also make changes from section 4.3a of the prior judgment and sentence and condition (a)(5) of Appendix H to take into account intervening changes in the law.

FACTS AND PROCEDURAL BACKGROUND

In October 2020, Fernando Santacruz was charged with having committed third degree rape of his then-wife in November 2019. His wife did not report the crime until five months after it occurred, although evidence established that she spoke with family members about it early on. The charge was later amended to allege domestic violence. Key among the evidence against Mr. Santacruz was the testimony of his aunt, Jeanie Wynhoff, who he had requested mediate issues between the couple. She said that after hearing about the rape from the wife, Mr. Santacruz admitted to her that "he made her and she didn't want to and he did it anyways." Rep. of Proc. (RP) at 702. According to Mr. Santacruz, the only wrongdoing he recalled discussing with Ms. Wynhoff was having been unfaithful to his wife.

2

Errors assigned on appeal are to events taking place at Mr. Santacruz's jury trial,
during which the State called four witnesses: the victim, Ms. Wynhoff, Detective Stephen
Evitt, and a domestic violence expert. When trial commenced, the defense anticipated
calling three witnesses: Natasha and Elaina Santacruz, both sisters-in-law of Mr.
Santacruz and his wife, and a defense investigator.

The first error alleged by Mr. Santacruz occurred during the examination of
Detective Evitt, the State's third witness. Detective Evitt testified to his background and
his investigation of Mr. Santacruz's wife's complaint. His investigation included an
interview of Mr. Santacruz, which had been recorded, and was played for the jury.

During a brief cross-examination of the detective, defense counsel confirmed that
when interviewed, Mr. Santacruz never admitted to any wrongdoing:

> Q. Okay. And during that interview, would it be fair to say that you
> asked him repeatedly about what happened with [his wife], what he
> talked about with Jeanie Wynhoff, in the—in mid November of
> 2020?
>
> A. Yes. I spoke with him a couple different times, yes.
>
> Q. Okay. Did—did he ever admit that he raped [his wife]?
>
> A. No.
>
> Q. Did he ever admit that he forced [his wife] to have sex with him?
>
> A. No.

RP at 766.

On redirect and recross, both lawyers asked the detective about Mr. Santacruz's
response when asked if he had told Ms. Wynhoff about having had nonconsensual sex

3

with his wife.  Detective Evitt agreed that Mr. Santacruz's response was that he did not

recall discussing anything like that with his aunt.  The prosecutor's further redirect drew

an objection and ruling at issue on appeal:

> Q.      . . . [H]ow many interviews would you say that you've done with individuals who have been accused of sexual assault?
>
> A.      Probably a couple hundred.
>
> Q.      And in your experience, if you confront somebody with an accusation, what is their general response?
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object to this just on relevance grounds.
>
> [PROSECUTOR]:  He opened the door to it, your Honor.
>
> THE COURT:  I've overruled the objection.
>
> THE WITNESS:  Could you repeat?
>
> Q.      (By [the prosecutor])  When you confront somebody with a sexual assault allegation, generally what is their response to you?
>
> A.      Denial or minimization.

RP at 768-69.

Throughout trial, defense counsel repeatedly said they intended to call Elaina

Santacruz as a witness.  Whether she would testify was called into doubt only once, when

she was noticed in the courtroom during testimony of another witness and the State asked

that her testimony not be permitted.  The State soon relented, acknowledging that there

had been confusion about when a subpoena had required her appearance.

After the State rested its case, the defense called Natasha Santacruz as its first

witness.  When she completed her testimony and was excused, defense counsel again

indicated it would be calling Elaina Santacruz and even announced her as its next

witness. Defense counsel quickly corrected, however, stating that it would call its

defense investigator next. After his questioning was completed and the investigator was

excused, the sidebar was conducted that Mr. Santacruz assigns as his second error.

Events are recounted in the transcript as follows:

> [DEFENSE COUNSEL]: Your Honor, could we discuss one thing outside the presence of the jury?
> THE COURT: Would a sidebar work?
> [DEFENSE COUNSEL]: Yes. Yes.
>     (A SIDEBAR WITH THE COURT AND COUNSEL WAS HELD.)
> [DEFENSE COUNSEL]: Your Honor, we're not going to call Elaina Santacruz, your Honor.
> THE COURT: Okay. Okay. So does the defense wish to call any further witnesses?
> [DEFENSE COUNSEL]: No, your Honor. Actually, hold on a second.
>     (A DISCUSSION WAS HELD BY DEFENSE COUNSEL.)
> [DEFENSE COUNSEL]: Your Honor, the defense rests.

RP at 841.

The jury found Mr. Santacruz guilty. The court imposed a standard range

sentence of 48 months total confinement, with 12 months of community custody. As a

condition of community custody, the court prohibited Mr. Santacruz from having "any

direct or indirect contact, including but not limited to, personal, telephonic, written, or

verbal with the victim." Clerk's Papers (CP) at 108. To facilitate this condition, the

court entered a SAPO that restricted Mr. Santacruz from coming within 300 feet of his ex-wife for five years.

Mr. Santacruz appealed. Following the completion of briefing and the effective date of 2023 legislation that affected Mr. Santacruz's liability for the penalty assessment provided by RCW 7.68.035(1), we granted him leave to file a supplemental brief to address changes of law affecting section 4.3a of his judgment and sentence and condition (a)(5) of its Appendix H.

## ANALYSIS

I. THE SUBJECT MATTER OF THE OFF-THE-RECORD, UNMEMORIALIZED SIDEBAR DID NOT IMPLICATE MR. SANTACRUZ'S PUBLIC TRIAL RIGHT

Mr. Santacruz's first assignment of error is to the off-the-record, unmemorialized sidebar conducted after defense counsel called his last witness. He contends that the sidebar violated his federal and state constitutional rights to a public trial and requires reversal. While he acknowledges that our Supreme Court held in *State v. Smith*, 181 Wn.2d 508, 511, 334 P.3d 1049 (2014), that traditional sidebar conferences do not implicate the public trial right, he argues that the lack of a record in his case makes it impossible to know the sidebar's subject matter or duration, and it is thereby impossible to know if it was a "proper sidebar" as that term is used in *Smith* and in *State v. Whitlock*, 188 Wn.2d 511, 396 P.3d 310 (2017). "Proper sidebars" as defined by the Supreme Court are "proceedings that 'deal with the mundane issues implicating little public

interest[, are] . . . done only to avoid disrupting the flow of trial, and . . . [are] either . . .

on the record or . . . promptly memorialized in the record.'" *Whitlock*, 188 Wn.2d at 522

(alterations in original) (quoting *Smith*, 181 Wn.2d at 516 & n.10).

One of the State's responses to this contention was that since it was the

"unknowns" about the sidebar that were the problem, the proper remedy was to remand

for fact-finding by the trial court. That is the course we followed. In response to our

order for fact-finding, the trial court conducted a hearing at which it heard testimony

from the prosecutor and one of Mr. Santacruz's defense lawyers, both of whom were

present at the time of the sidebar. Mr. Santacruz also testified. The court entered the

following findings of fact:

1. [Jesse] Collins[, one of Mr. Santacruz's trial lawyers,] asked the Court to discuss a topic outside the presence of the jury. The Court suggested a sidebar, and Mr. Collins agreed.
2. The length of time of the sidebar was less than one minute.
3. The Court did not issue any ruling or guidance during the sidebar.
4. Neither party made any objections during the sidebar.
5. At the sidebar, the defense counsel indicated they were not going to call Ms. Elaina Santacruz as a witness and that the defense would rest.
6. The subject matter of the sidebar was subsequently indicated on the record, by defense counsel indicating they were not going to call Ms. Elaina Santacruz as a witness and the Defense was resting.

Findings of Fact for Fact Finding Proc., *State v. Santacruz*, No. 20-1-00555-04, at 4-5

(Chelan County Sup. Ct. May 15, 2023).

Whether an accused's public trial right has been violated is a question of law we review de novo. *State v. Karas*, 6 Wn. App. 2d 610, 617, 431 P.3d 1006 (2018) (citing *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006)). We examine first, whether the public trial right is implicated at all; second, if it *is* implicated, whether there was a closure of the courtroom that was not de minimis; and third, if there *was* a closure, whether it was justified. *Id.*

The experience and logic test is used to determine whether the proceeding at issue implicates the public trial right. *Smith*, 181 Wn.2d at 514. *Smith* found that the "experience" prong of the test is not satisfied by a traditional sidebar because "[s]idebar conferences have historically occurred outside the view of the public." *Id.* at 515. The logic prong asks whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* at 518. *Smith* observed that proper sidebars deal with mundane issues implicating little public interest. *Id.* at 516. Our Supreme Court has observed that typical examples of mundane issues that do not implicate public interest are "scheduling, housekeeping, and decorum." *Whitlock*, 188 Wn.2d at 514. The unrecorded sidebar in Mr. Santacruz's case was less than one minute long and dealt with only a scheduling matter.

Mr. Santacruz nevertheless argues that because the sidebar was not "on the record or . . . promptly memorialized in the record," it failed to satisfy that part of *Smith*'s definition of a "proper sidebar." *See Smith*, 181 Wn.2d at 516 & n.10. We have

previously held, however, that the characteristics included in the Supreme Court's

definition of a "proper sidebar" is not a litmus test for applying the public trial right.

*Karas*, 6 Wn. App. 2d at 620. "We still examine experience and logic in determining

whether the public trial right applies." *Id.* No violation of Mr. Santacruz's public trial

right is shown.

II.     THE TRIAL COURT SHOULD HAVE SUSTAINED THE RELEVANCE OBJECTION TO THE
        STATE'S QUESTION ABOUT OTHER INTERVIEWEES' RESPONSES TO SEXUAL ASSAULT
        ALLEGATIONS, BUT THE ERROR WAS HARMLESS

Mr. Santacruz's next assignment of error is that the trial court abused its discretion

by overruling his relevance objection when Detective Evitt was asked about other

interviewees' general response when confronted with an accusation of sexual assault.

The prosecutor first elicited the detective's testimony that he had interviewed a "couple

hundred" individuals accused of sexual assault. RP at 768. The detective was not asked

how many of his interviewees had been found guilty.

On appeal, Mr. Santacruz argues that the detective's response ("Denial or

minimization") was not only irrelevant, it was also an impermissible opinion on Mr.

Santacruz's guilt. The State continues to defend the prosecutor's question as relevant and

supportable where the defense had "opened the door" by obtaining Detective Evitt's

agreement that Mr. Santacruz repeatedly denied the accusation.

Only relevant evidence is admissible. ER 402. "'Relevant evidence' means

evidence having any tendency to make the existence of any fact that is of consequence to

9

the determination of the action more probable or less probable than it would be without the evidence." ER 401. The "fact of consequence" implicated by the prosecutor's objected-to question is whether the fact that Mr. Santacruz denied the accusation should be viewed as reliable evidence of his innocence. Before turning to a relevance analysis, we point out that this could have been a matter of argument by the prosecutor even without the detective's testimony.

Turning to relevance, we agree that the question was objectionable. This was unlike testimony by an expert witness discussing social science on a witness issue like battered woman's syndrome, or eyewitness identification, or the effect of controlled substances on the ability to form intent. The detective was testifying about his personal experience with a couple hundred individuals investigated by the Wenatchee Police Department, an unknown number of whom were innocent. Common sense would suggest that the reliability Mr. Santacruz's denials when interviewed were open to doubt. But the general response of a couple hundred suspects we have no basis for believing are representative of all suspects, an unknown number of whom were never proved guilty, is not *evidence* that makes it *more or less probable* that Mr. Santacruz's denials were unreliable.

As for Mr. Santacruz's argument that the detective was providing opinion testimony on his guilt, we disagree. The gist of Detective Evitt's answer was not that Mr.

10

Santacruz had committed rape as charged, it was only that Mr. Santacruz's denial when interviewed was not particularly reliable evidence that he had not.

The questioning was addressed to the credibility of defendants, though, which can itself be objectionable opinion testimony. "Generally, no witness may offer testimony in the form of an opinion regarding the veracity of the defendant. Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury." *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); *and see State v. Lang*, 12 Wn. App. 2d 481, 487-88, 458 P.3d 791 (2020).

For Mr. Santacruz to be entitled to raise this issue for the first time on appeal, it must be manifest constitutional error. RAP 2.5(a)(3). The Supreme Court explained in *Kirkman* that no manifest error infringing on a constitutional right *necessarily* exists when a witness expresses an opinion that the defendant perceives to be an opinion on his guilt or credibility. 159 Wn.2d at 935. It held that "'[m]anifest error' requires a nearly explicit statement by the witness" on the ultimate issue. *Id.* at 936. Detective Evitt's was not such a statement. The implication of the detective's testimony was that as a general matter, an accused person's denial of guilt to a police officer is not particularly credible—not that *Mr. Santacruz* was not credible or that he was guilty.

Accordingly, the only error demonstrated by Mr. Santacruz is that the trial court abused its discretion in overruling the objection on relevance grounds. This is nonconstitutional error. The nonconstitutional harmless error test asks if there is a

11

reasonable probability that without the error the outcome of the trial would have been materially affected. *State v. Rocha*, 21 Wn. App. 2d 26, 34, 504 P.3d 233 (2022) (quoting *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014)). Unsurprisingly, the detective's testimony about the general response of people accused of sexual assault was not mentioned during either side's closing arguments to the jury. The prosecutor evidently saw no need to point out to jurors that Mr. Santacruz would likely deny guilt even if he was guilty. Detective Evitt's three-word answer, while erroneously admitted, was harmless.[1]

---

[1] For the same reason, we would find admission of the evidence harmless even under the constitutional harmless error test. That test requires the State to demonstrate by clear and convincing evidence that the error was harmless beyond a reasonable doubt. *Lang*, 12 Wn. App. 2d at 489.

Constitutional harmless error can be found not only where the State's evidence is overwhelming, but also where the objectionable evidence is inconsequential. *E.g.*, *id.* (expert's testimony challenging defendant's credibility was harmless beyond a reasonable doubt where defendant's testimony "was patently not credible"); *State v. Wilcoxon*, 185 Wn.2d 324, 336, 373 P.3d 224 (2016) (plurality opinion) (erroneously admitted testimony was "unimportant to the State's overall case"); *State v. Myrick*, 102 Wn.2d 506, 515, 688 P.2d 151 (1984) (evidence of marijuana seized in warrantless search should not have been admitted but "was inconsequential" and harmless error); *State v. Gocken*, 71 Wn. App. 267, 279 n.10, 857 P.2d 1074 (1993) (even if improperly seized, photographs of a taped door "added very little to the State's case" and "was inconsequential").

That persons interviewed by Detective Evitt generally tended to deny accusations that they had committed sexual assault was inconsequential information.

III.    RESENTENCING IS REQUIRED TO ADDRESS MODIFICATION OF A NO-CONTACT
        PROVISION

Mr. Santacruz's final assignment of error is that the no-contact provision of his

community custody conditions, which bars him from "any direct or indirect contact" with

his ex-wife, with whom he shares three children, interferes with this fundamental right to

parent.  He contends modification is required to allow for contact through the court or

counsel.  The State agrees the case should be remanded for resentencing to address this

issue.

When sentencing conditions interfere with fundamental rights, including the right

to a parent-child relationship, such conditions must be justified in the record and

"'reasonably necessary to accomplish the essential needs of the State and public order.'"

*In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010) (quoting *State*

*v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)); *see State v. Torres*, 198 Wn. App.

685, 689-91, 393 P.3d 894 (2017).  We accept the State's concession.

Mr. Santacruz's conviction is affirmed.  We remand for a resentencing at

which the court can consider modification of the no-contact provision and shall

make changes from section 4.3a of the prior judgment and sentence and condition (a)(5)

of Appendix H, to take into consideration changes in the law relieving indigent

defendants from liability for the penalty assessment provided by RCW 7.68.035(1)

No. 38637-6-III
*State v. Santacruz*

(*see* RCW 7.68.035(4), effective July 1, 2023) and costs of supervision. *See State v. Wemhoff*, 24 Wn. App. 2d 198, 201-02, 519 P.3d 297 (2022).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.P.T.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

14