[No. 60015-0-I.   Division One.   April 18, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. TINH TRINH LAM, *Appellant*.

*Tinh Trinh Lam,* pro se.

*Christopher Gibson* and *Jordan B. McCabe* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *James M. Whisman* and *Catherine M. McDowall, Deputies,* for respondent.

¶1 LEACH, A.C.J. — Tinh Trinh Lam appeals his conviction for first degree murder. He contends that the trial court violated his constitutional right to a public trial by interviewing a previously seated juror in chambers without first conducting a *Bone-Club*[1] analysis. Lam also contends that he received ineffective assistance of counsel on several grounds, including failure to adequately cross-examine the State's forensic experts, failure to present a plausible counter-scenario of Lam's innocence in closing arguments, and failure to object to the trial court's response to a juror question that advised the jury that the case did not involve capital punishment. Because a failure to conduct a *Bone-Club* analysis before restricting public access to a criminal trial requires reversal in all but the most exceptional circumstances, we reverse Lam's conviction and remand for a new trial without reaching the other issues presented.

## FACTS

¶2 On May 13, 2005, the State charged Lam with the first degree murder of his one-time girl friend and business partner, Nguyet Minh Nguyen. Over the next 22 months, numerous hearings and proceedings were held. Lam's trial began on March 12, 2007. Jury selection began on March 14 and ended on March 15.

¶3 On March 15, after the jury was sworn and seated, the judge read a preliminary instruction, and counsel gave opening statements. The court then recessed until the following Monday and met in chambers with juror 10, defense counsel, and the prosecutor. The record does not indicate the defendant's presence. At the outset of this conference, the judge stated, "For purposes of the record,

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

this portion of the record will be filed under seal until further order of the Court." Statements in the transcript make clear that the court closed the conference to the public and the press.

¶4 The court called the conference because of safety concerns that juror 10 expressed to the bailiff. In chambers, juror 10 described these concerns to the judge and counsel:

> THE COURT: Why don't you tell us what the concern is.
>
> JUROR NO. 10: Sure. I'm sorry for causing any disruption.
>
> THE COURT: That's okay.
>
> JUROR NO. 10: The concern I have is because of the nature of the trial and the potential outcome for the defendant. My name is very, very unusual. . . . And what I'm concerned about is that . . . it would be very easy for somebody who was angry or upset to find me or somebody in my family.

The court listened to a further explanation of these concerns and inquired about the juror's ability to give either side a fair trial. Juror 10 responded, "No. It won't impact my judgment. . . . The fact is, my judgment will be based on what I see and hear." After the prosecutor and one of Lam's defense lawyers asked a few questions, juror 10 left. Counsel and the court then discussed the situation, and counsel for both parties agreed juror 10 could continue to serve.

¶5 After the jury found Lam guilty of murder in the first degree, Lam appealed, contending in part that his right to a public trial had been violated. This court ordered the proceedings stayed pending our Supreme Court's decision in *State v. Strode*[2] and *State v. Momah*.[3] On October 8, 2009, our Supreme Court issued its decisions in these cases. We lifted the stay and ordered supplemental briefing on the impact of *Strode* and *Momah*.

---

[2] 167 Wn.2d 222, 217 P.3d 310 (2009).

[3] 167 Wn.2d 140, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010).

## ANALYSIS

¶6 Lam contends the court violated his right to a public trial under article I, section 22 of the Washington State Constitution and the Sixth Amendment by questioning juror 10 in chambers without first applying and weighing the five *Bone-Club* factors. We agree.

¶7 Whether a trial court procedure violates a criminal defendant's right to a public trial is a question of law that we review de novo.[4] Article I, section 22 provides, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial."[5] The Sixth Amendment includes a similar provision. These provisions assure a fair trial, foster public understanding and trust in the judicial system, and provide judges with the check of public scrutiny.[6] While the public trial right is not absolute, Washington courts strictly guard it to assure that proceedings occur outside the public courtroom in only the most unusual circumstances.[7]

¶8 To protect the defendant's right to a public trial, our Supreme Court held in *Bone-Club* that a trial court must apply and weigh five factors before restricting public access to a portion of a criminal trial.[8] Also, the court must

---

[4] *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

[5] Additionally, article I, section 10 of the Washington State Constitution provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This provision secures the public's right to open and accessible proceedings and is not at issue here.

[6] *State v. Duckett*, 141 Wn. App. 797, 803, 173 P.3d 948 (2007) (citing *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005); *Dreiling v. Jain*, 151 Wn.2d 900, 903-04, 93 P.3d 861 (2004)).

[7] *Easterling*, 157 Wn.2d at 174-75; *Brightman*, 155 Wn.2d at 514-15; *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804-05, 100 P.3d 291 (2004); *Bone-Club*, 128 Wn.2d at 258-59.

[8] Under *Bone-Club*,

"1. The proponent of closure . . . must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right

enter specific findings justifying its closure order.[9] Generally, if the record indicates a violation of a defendant's public trial right, we presume prejudice,[10] reverse the conviction, and remand for a new trial.[11]

¶9 As a threshold matter, the State asserts that Lam failed to preserve the public trial issue for appellate review because he failed to raise this issue before the trial court. However, RAP 2.5(a) allows a party to raise for the first time on appeal manifest error affecting a constitutional right. In three recent cases, our Supreme Court has allowed a party to assert the denial of a public trial right for the first time on appeal, *In re Personal Restraint of Orange*,[12] *Momah*, and *Strode*. These cases recognize the constitutional magnitude of the public trial right and presume that its denial is prejudicial. If Lam can establish that the questioning of juror 10 violated his public trial rights, he may raise the issue for the first time on appeal.

¶10 The State next contends that no violation of Lam's right to a public trial occurred. It acknowledges that both the United States Supreme Court and the Washington Supreme Court have held that closure of voir dire is

---

to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (second alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[9] *Easterling*, 157 Wn.2d at 175 (citing *Bone-Club*, 128 Wn.2d at 258-59).

[10] *Easterling*, 157 Wn.2d at 181 (citing *Bone-Club*, 128 Wn.2d at 261-62).

[11] *Easterling*, 157 Wn.2d at 174 (citing *Orange*, 152 Wn.2d at 814).

[12] 152 Wn.2d 795, 100 P.3d 291 (2004).

prohibited.[13] But it argues that the questioning of juror 10 in chambers is more like a side bar than voir dire. Because the jury had already been questioned and selected in a public proceeding, the State characterizes this in-chambers questioning as "simply a housekeeping matter." Therefore, the State reasons, Lam had no right to be present during the questioning, and his public trial right did not apply. We disagree.

¶11 We perceive no principled basis for distinguishing either the process or purpose of voir dire and the questioning of juror 10. In each instance, a judge and counsel question an individual to gather facts needed to decide whether that person will serve as a juror. The questioning of juror 10 conducted after the jury was selected was procedurally similar to and conducted for the same purpose as voir dire: determining an individual's ability to serve as a juror. Since a defendant's public trial rights apply to voir dire, by analogy they apply to the questioning of a sworn juror in chambers conducted for the purpose of determining whether that juror will continue to serve.

¶12 The State also contends that Lam waived his public trial rights by failing to object to the procedure used by the court and by his counsel's participating in the questioning of juror 10. A defendant's failure to object to closure at trial does not waive his public trial rights.[14] Neither does defense counsel's participation in the closed questioning of a juror.[15] Lam did not waive his public trial rights.

¶13 The State attempts to distinguish this case on the basis of the length of time spent questioning juror 10. Essentially, this is an argument for a de minimis or trivial closure rule, an argument that the State presents separately. Although the Washington Supreme Court has not decided whether a violation of a public trial right can be de

---

[13] *See Presley v. Georgia*, ___ U.S. ___, 130 S. Ct. 721, 724, 175 L. Ed. 2d 675 (2010); *Orange*, 152 Wn.2d at 804.

[14] *Brightman*, 155 Wn.2d at 517-18 (citing *Bone-Club*, 128 Wn.2d at 257).

[15] *Strode*, 167 Wn.2d at 229.

minimis, dicta in *State v. Easterling*[16] strongly suggests that it cannot.

¶14 In *Easterling*, the majority opinion responded to then Justice Madsen's concurring opinion in which she advocated for a de minimis closure standard and explained her position that this standard comports with a constitutional right to a public trial.[17] The opinion observed that a majority of the Washington Supreme Court has never found a public trial right to be de minimis.[18] It noted that a majority of the cases cited by Justice Madsen were federal cases and distinguished them on the basis that the United States Constitution does not contain an open administration of justice provision like that contained in article I, section 10 of the Washington State Constitution.[19] The majority concluded its response as follows:

> The denial of the constitutional right to a public trial is one of the limited classes of fundamental rights not subject to harmless error analysis. *See Bone-Club*, 128 Wn.2d at 261-62; *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). Prejudice is necessarily presumed where a violation of the public trial right occurs. *Bone-Club*, 128 Wn.2d at 261-62 (citing *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923)). As a result, precedent directs that the appropriate remedy for the trial court's constitutional error is reversal of Easterling's unlawful delivery of cocaine conviction and remand for new trial.[20]

¶15 Justice Chambers, in a concurring opinion joined by Justices Owens and Sanders, expressed the view that under the open administration of justice provision of our state constitution, "there is no case where the harm to the

---

[16] 157 Wn.2d 167, 180-81, 137 P.3d 825 (2006).

[17] *Easterling*, 157 Wn.2d at 182-85 (Madsen, J., concurring).

[18] *Easterling*, 157 Wn.2d at 180.

[19] *Easterling*, 157 Wn.2d at 181 n.12.

[20] *Easterling*, 157 Wn.2d at 181.

principle of openness, as enshrined in our state constitution, can properly be described as de minimis."[21]

¶16 Although the discussion of a de minimis rule in *Easterling* is dicta, we are persuaded that no de minimis rule is applicable to a public trial right violation. However, even if a "trivial closure" rule existed, it would not apply in this case. In *Easterling*, the court stated that a closure cannot be placed in that category if it is deliberately ordered and is neither ministerial nor trivial in result.[22] Here the court ordered the closure. As explained above, the questioning of juror 10 was not ministerial. Finally, a decision to retain or excuse a juror in a criminal case in a jurisdiction requiring a unanimous verdict to convict is not trivial.

¶17 Because the court improperly excluded the public from the questioning of juror 10 in unexceptional circumstances without first conducting a *Bone-Club* analysis, this case requires a new trial as the proper remedy. In view of this disposition, we do not reach the other issues raised by Lam.

¶18 Reversed and remanded for a new trial.

GROSSE and ELLINGTON, JJ., concur.

---

[21] *Easterling*, 157 Wn.2d at 186 (Chambers, J., concurring).

[22] *Easterling*, 157 Wn.2d at 180-81.