
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JUN 30 AM 9: 53

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69950-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MAURICE VAN THROWER, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 30, 2014 |
| | ) | |

LEACH, J. — Maurice Thrower appeals his convictions for two counts of child molestation in the first degree. Thrower claims that he received ineffective representation when defense counsel "opened the door" to evidence of Thrower's uncharged misconduct and that a subsequent limiting instruction did not cure the resulting prejudice. Thrower also contends the trial court violated his public trial right by directing counsel to exercise peremptory challenges using a written list. In a statement of additional grounds, Thrower also alleges subornation of perjury, ineffective assistance of counsel, impermissible opinion testimony, a Brady[1] violation, prosecutorial misconduct, and insufficient evidence to support his convictions. Because Thrower fails to show ineffective assistance or a public trial violation and the further allegations in his statement of additional grounds have no merit, we affirm his convictions.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

## FACTS

In 2005, Maurice Thrower and Jennifer Wells began dating. Wells lived in Northgate with her eight-year-old daughter, T.W., and T.W.'s younger sibling. Thrower kept his personal belongings at the home and sometimes stayed the night.

In spring 2006, Wells moved the family to the Burke Gilman Place Apartments in north Seattle. Thrower moved his personal belongings to the apartment and sometimes stayed the night. Wells worked during the day and hired a babysitter, C.A., to watch the children. Wells had Thrower come by the apartment to check in on C.A. and the children. By this time, T.W.'s relationship with Thrower had changed; T.W. became openly rude and was generally disrespectful toward him. Thrower and Wells's relationship also deteriorated during this time, and they ended the relationship in 2007, when T.W. was 10 years old.

When T.W. was 12 years old, Wells discovered that T.W. was using her phone to send nude photographs of herself to a boy. Wells asked T.W. why she was acting out and if anyone was touching her. T.W. told her mother that Thrower had sexually molested her. T.W. did not want her mother to contact the police, so Wells did not. When she was 16, T.W. learned that Thrower was back in the community and decided to report the incidents to the police. The State charged Thrower with two counts of child molestation in the first degree.

Before trial, it came to light that C.A., who was one of the State's witnesses, had alleged that Thrower had also had inappropriate sexual contact with her. The prosecutor initially did not seek to introduce evidence of this incident because it was "too far afield."

After voir dire of prospective jurors and still in open court, counsel each exercised seven peremptory challenges by alternately listing juror numbers on a form pleading titled "Peremptory Challenges." The form contained two columns of numbered blank lines, one labeled "Plaintiff/Petitioner" and the other "Defendant/Respondent." While counsel passed the form back and forth, the trial court gave jurors preliminary oral instructions.[2] Once counsel completed the form and signed it, the court read aloud the numbers of the five excused jurors seated in the jury box, filled their seats and one alternate with jurors from the venire, and excused the rest of the panel. That same day, the court filed the form with the county clerk.

At trial, Wells testified that there were "a lot of times" when she would wake up and notice Thrower was no longer in her bed. T.W. testified that while she lived with her mother in the Northgate home, Thrower would enter her room at night and crawl into her bed. She testified that she would often wake up to find Thrower lying beside her, pressing his erection against her buttocks and running

---

[2] The court explained to the jury, "I'm going to take advantage of the time while [counsel] are doing their work [of exercising peremptory challenges] to instruct you on what comes next. And this is a way of using time efficiently, but it really, especially, applies to the 13 jurors who will hear this case."

his hands over her hips and legs. T.W. also testified about an occasion when she was sleeping on the floor of the living room with her two younger cousins and awoke to find Thrower next to her, touching her breast beneath her tank top. When she moved away from him, Thrower stopped and "went back upstairs." T.W. testified that Thrower continued entering her bedroom at night, lying beside her and placing his hands on her hips. C.A. and T.W. both testified that one day they were playing at T.W.'s apartment when Thrower entered the room with his erect penis "hanging out of his zipper."

At trial, C.A. testified that when she was 11 or 12, she would babysit T.W. at Wells's apartment. C.A. said that Thrower "was never [at T.W.'s house], except for the one time" when Thrower exposed himself to the girls. During cross-examination, defense counsel pointed out several inconsistencies between C.A.'s trial testimony and her earlier investigation interviews. Counsel noted that even though C.A. was T.W.'s babysitter, C.A. "didn't do anything about this alleged incident at the time." C.A. confirmed that she did not report the incident to either her mother or Wells. Next, the following exchange occurred:

> [Defense]: You say you were scared, has Mr. Thrower ever threatened you?
>
> [C.A.]: No.
>
> [Defense]: Has he ever done anything to make you fear him, physical, other than your allegation around this?
>
> [State]: I can't hear the witness's response.
>
> [Defense]: She hasn't given one.

[State]: Well, I thought she was shaking her head.

[Defense]: Has he ever threatened you?

[C.A.]: No.

[Defense]: No?

C.A. was crying and "shaking." Defense counsel continued cross-examination.

Outside the presence of the jury, the State argued that by asking C.A. about anything "physical" Thrower did to make her afraid, defense counsel opened the door to the earlier incident involving C.A. and Thrower. The prosecutor had instructed C.A. that "she was absolutely not permitted to talk about the second incident" and argued that is likely why "[C.A.] said [Thrower] only came by the one time." Defense counsel argued that he was questioning C.A. about the specific incident involving Thrower's exposure, not any other incident. The trial court ruled that defense counsel's question of anything "physical, other than your allegations around this" had opened the door and that the evidence was "highly relevant and not unfairly prejudicial" because it went to C.A.'s credibility. Defense counsel requested and received a limiting instruction under ER 404(b).

On redirect, C.A. testified about another incident that she had not mentioned earlier because "[she] was told that the story wasn't going to be brought in." The State asked C.A. whether Thrower had done something to make her fearful of him. C.A. answered, "[Y]es," and then provided details. According to C.A., a couple of days after Thrower exposed himself, C.A. was doing laundry in the kitchen. T.W. was outside playing at the time, and no one

else was in the house. Thrower picked C.A. up and carried her into the living room, where he kissed her on her forehead. Thrower then said they were going upstairs and that it was okay. Once upstairs in Wells's bedroom, Thrower was on top of C.A., and he started to kiss her on her neck and chest. C.A. did not say anything and started crying. Thrower told C.A. they were going to keep this to themselves and went downstairs. After the incident, C.A. stopped going to Wells's house to babysit, and she testified that she was still scared of Thrower.

Thrower testified in his own defense and denied all allegations of inappropriate sexual conduct. The parties stipulated to Thrower's absence from the community before February 16, 2005, and from June 16-30, 2005.

The jury found Thrower guilty as charged. The court imposed an indeterminate standard range sentence of 180 months to life.

Thrower appeals.

## ANALYSIS

### Ineffective Assistance of Counsel

Thrower first alleges that his trial counsel provided ineffective assistance to Thrower's significant prejudice by opening the door to testimony about Thrower's uncharged misconduct. This court reviews an ineffective assistance of counsel claim de novo as a mixed question of law and fact.[3] To establish ineffective assistance of counsel, Thrower must show (1) that his counsel's

---

[3] State v. Davis, 174 Wn. App. 623, 639, 300 P.3d 465 (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)), review denied, 178 Wn.2d 1012 (2013).

conduct fell below an objective standard of reasonableness and (2) a reasonable possibility that but for counsel's deficient performance, the outcome of his trial would have been different.[4] We strongly presume the adequacy of trial counsel's assistance.[5] A defendant must establish both prongs of the test to succeed with an ineffective assistance of counsel claim.[6]

By asking if Thrower had "ever done anything to make you fear him, physical, other than your allegations around this," the defense intended to show only that Thrower never "threatened" C.A. Defense counsel did not make a strategic or tactical decision to open the door to Thrower's alleged earlier uncharged conduct, given counsel's strenuous objections to admission of C.A.'s testimony about the incident.

Our Supreme Court has stated that "questions on cross-examination may elicit surprisingly damaging answers," but "the competence of counsel must be judged from the whole record and not from isolated segments of it."[7] The law affords trial counsel wide latitude in the choice of tactics.[8] Defense counsel's continued cross-examination of C.A. was aimed at highlighting inconsistencies in her testimony. In closing argument, defense counsel again used the incident to attack C.A.'s credibility, arguing that C.A. "was crying because she got caught

[4] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

[5] Reichenbach, 153 Wn.2d at 130 (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

[6] Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[7] State v. Piche, 71 Wn.2d 583, 590-91, 430 P.2d 522 (1967).

[8] Piche, 71 Wn.2d at 590.

lying" and "[s]he got caught with inconsistencies." Counsel requested and received a limiting instruction. Thrower has not shown that defense counsel's tactics constitute deficient performance.

Our Supreme Court has also recognized that when evaluating similar fact evidence, "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest."[9] Here, we conclude that Thrower has not shown prejudice. The State presented substantial circumstantial evidence apart from C.A.'s testimony, including Thrower's own testimony, which had a detailed description of T.W.'s bed. Thrower described T.W.'s "metal futon bed" and testified "it made a lot of noise" and would squeak, though he had earlier said that he only "cleaned her room" one time. Viewing the admission of C.A.'s testimony about the uncharged misconduct in the context of the whole record, Thrower fails to show a reasonable possibility that but for this claimed error, the outcome of his trial would have been different.

Limiting Instruction

Defense counsel submitted the following limiting instruction, which the trial court gave to the jury:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of the testimony of [C.A.] with regards to the allegation concerning the Defendant picking her up, carrying her, and kissing her and may be considered by you

---

[9] State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982).

only for the purpose of determining whether she had reason to fear the Defendant. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Thrower contends that this limiting instruction was "incomplete and insufficient" because it failed to state explicitly "that jurors could not use the evidence to show appellant had a particular character (child molester) and acted in conformity with that character."

We review de novo alleged errors of law in jury instructions.[10] We apply an abuse of discretion standard to questions concerning the number and specific wording of instructions.[11]

An adequate ER 404(b) limiting instruction must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in conformity with that character.[12]

An error in a limiting instruction is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[13]

Here, the court instructed the jury that it admitted the evidence "only for the purpose of determining whether [C.A.] had reason to fear the defendant" and jurors "may not consider it for any other purpose," which would include character.

_____

[10] Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995); Singh v. Edwards Lifesciences Corp., 151 Wn. App. 137, 150, 210 P.3d 337 (2009).
[11] Hue, 127 Wn.2d at 92 n.23 (citing Douglas v. Freeman, 117 Wn.2d 242, 256, 814 P.2d 1160 (1991)).
[12] State v. Gresham, 173 Wn.2d 405, 423-24, 269 P.3d 207 (2012).
[13] Gresham, 173 Wn.2d at 425 (internal quotation marks omitted) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

This court presumes that the jury followed the trial court's instruction.[14] Thrower does not show a reasonable probability that a different instruction would materially change the outcome of his trial. The limiting instruction was adequate.

Right to a Public Trial

Thrower contends that by having counsel exercise their peremptory challenges on paper during the court's preliminary oral instruction of the jury, the trial court "conducted a portion of jury selection in private." Though all parts of voir dire took place in open court, Thrower asserts this process violated his public trial right because "the public was unable to see or hear what was happening when the attorneys made peremptory challenges."

An alleged violation of the right to a public trial presents a question of law we review de novo.[15] The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right of a criminal defendant to a public trial.[16] Article I, section 10 of the Washington Constitution contains an additional guarantee of open court proceedings: "[j]ustice in all cases shall be administered openly, and without unnecessary delay." There is a strong presumption that courts are to be open at all stages of

---

[14] State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008); State v. Johnson, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).

[15] State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

[16] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, . . . [and] to have a speedy public trial by an impartial jury.").

trial.[17] The right to a public trial extends to the voir dire of prospective jurors.[18] In those cases where a Washington appellate court has found an improper closure during jury selection, the trial court conducted discussions with and/or dismissed potential jurors in a closed courtroom, chambers, or other private setting, outside the public eye.[19]

A party who proposes closure of a proceeding must show "an overriding interest based on findings that closure is essential to preserve higher values and narrowly tailored to serve that interest."[20] In State v. Bone-Club, the Washington Supreme Court set forth a five-factor test courts must use to evaluate the constitutionality of a proposed closure.[21] In State v. Sublett,[22] the court adopted

---

[17] Sublett, 176 Wn.2d at 70.

[18] Presley v. Georgia, 558 U.S. 209, 213, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010); State v. Wise, 176 Wn.2d 1, 11, 288 P.3d 1113 (2012).

[19] See, e.g., Wise, 176 Wn.2d at 6-7 (partial voir dire in chambers); State v. Paumier, 176 Wn.2d 29, 32, 288 P.3d 1126 (2012) (same); In re Pers. Restraint of Morris, 176 Wn.2d 157, 160-61, 288 P.3d 1140 (2012) (same); State v. Strode, 167 Wn.2d 222, 223, 217 P.3d 310 (2009) (same); State v. Brightman, 155 Wn.2d 506, 509, 122 P.3d 150 (2005) (courtroom closed to public during voir dire); In re Pers. Restraint of Orange, 152 Wn.2d 795, 799-800, 100 P.3d 291 (2004) (same); State v. Njonge, 161 Wn. App. 568, 570, 255 P.3d 753 (2011) (same); State v. Tinh Trinh Lam, 161 Wn. App. 299, 301, 254 P.3d 891 (2011) (interview of juror in chambers).

[20] State v. Momah, 167 Wn.2d 140, 148, 217 P.3d 321 (2009); see also Waller v. Georgia, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

[21] In Bone-Club, the court held that a court must consider the following factors on the record:
> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
> "2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> "3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened

the "experience and logic" test articulated by the United States Supreme Court in Press-Enterprise Co. v. Superior Court[23] to determine if a particular process must remain open to the public absent a Bone-Club analysis.

The record here does not support Thrower's claim that a closure occurred during jury selection in his trial. Voir dire, including for-cause challenges and some individual questioning of prospective jurors on sensitive topics, took place in open court. Counsel considered and recorded their uncontested peremptory challenges in open court. The form counsel used identified the prospective jurors by number, the order in which counsel made the challenges, and the party who made them. Members of the public saw the dismissed jurors leave and observed which jurors remained. The court did not announce which attorney had challenged each juror. But that same day the court filed the list as part of the record. Thrower does not dispute that this information was accessible as a public record.

We note that the court clerk electronically filed the form the same day counsel completed it. Thus, no significant delay occurred in public access to it. We do not address here two different factual scenarios—first, a significant delay

---

interests.
"4. The court must weigh the competing interests of the proponent of closure and the public.
"5. The order must be no broader in its application or duration than necessary to serve its purpose."
128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (alteration in original) (quoting Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).
[22] 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012).
[23] 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986).

in public access to the form or, second, the complete lack of public access to it. Either may undermine the right to open administration of justice. Here, the trial court's procedure, together with timely public access to the record, protected both "the core values of the public trial right" and the open administration of justice.[24] While we do not endorse the trial court's practice, we hold that it did not violate Thrower's right to a public trial.[25]

Statement of Additional Grounds

Thrower raises several pro se arguments. None have merit.

Thrower first contends that the prosecutor suborned perjury by "going along with the State's witnesses [C.A. and T.W.], knowing very well that this testimony was false." The record does not support Thrower's claim. C.A.'s testimony about one incident, when it came to light later that there were two, was not perjury. Nor does defense impeachment highlighting inconsistencies in testimony establish perjury. Thrower does not show that the State suborned perjury.

Second, Thrower alleges that defense's failure to call certain witnesses constituted ineffective assistance of counsel. At trial, Thrower testified in his own defense. Defense counsel did not call any other witnesses. Thrower contends

---

[24] Sublett, 176 Wn.2d at 73.

[25] Divisions Two and Three have held that the trial court does not violate a defendant's public trial right by allowing the attorneys to exercise peremptory challenges during a side bar. State v. Dunn, ___ Wn. App. ___, 321 P.3d 1283, 1285 (2014), petition for review filed, No. 90238-1 (Wash. May 16, 2014); State v. Love, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013), petition for review filed, No. 89619-4 (Wash. Dec. 9, 2013).

that testimony from T.W.'s grandmother, uncle, and the uncle's girlfriend that "they lived in the apartment [at various intervals] and were useing [sic] the downstairs as a living quarters would have no doubt created reasonable doubt in the jury producing an acquittal for Thrower." Generally, the decision to call a witness is a matter of legitimate trial tactics and will not support an ineffective assistance of counsel claim.[26] Defense counsel likely considered and decided against pursuing testimony that may not have been favorable to Thrower's case, especially given that these witnesses are members of T.W.'s family. Thrower does not show that this testimony had a reasonable probability of changing the outcome of his trial. We hold that Thrower does not show deficiency and therefore that he does not show ineffective assistance of counsel.

Thrower argues next that certain testimony was improper bolstering and impermissible opinion. At trial, Jennifer Wells testified about what faced T.W. after she reported her allegations against Thrower: "Come to court and tell a bunch of strange people about personal business and things that happened to her." Shannon Williams, a family friend, testified that she had urged Wells to report the allegations: "My feeling was that she needed to tell somebody, that it needed to stop. [T.W.] needed some closure. He—she didn't ever be allowed to do this to anybody again." Detective Kizzier described his interview protocol for child witnesses and testified that in his interview with T.W., "[H]er demeanor became more serious as we spoke about the incidents in question or the

---

[26] State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

-14-

allegations in question. And at one point she—when she got to a particular point of her narrative, she had a very—a much more pronounced emotional response." Kizzier's testimony provided context for the interview of a child victim and was rationally based on his perceptions of T.W. during his interview with her.[27] He did not testify that he believed T.W. or that she was telling the truth. Likewise, Wells's and Williams's testimony about "what happened to" T.W. does not constitute improper bolstering of T.W. or impermissible opinion on Thrower's guilt. Defense counsel was able to cross-examine each witness. "A jury must still determine credibility and truthfulness of each witness."[28]

Next, Thrower argues that the prosecutor "failed to disclose impeaching and exculpatory evidence that Thrower was incarcerated at the time T.W. says these allegations first took place," and that this failure constitutes a Brady violation. At trial, Thrower proposed that a defense investigator who had requested records from the State Department of Corrections (DOC) testify to the dates Thrower was incarcerated or on work release. The trial court excluded the investigator's testimony on the grounds that the investigator was not a custodian of the DOC records or competent to testify about them. The parties agreed to a stipulation that Thrower "was out of the community prior to February 16, 2005, and also between June 16, 2005, and June 30, 2005."

---

[27] See State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (permissible lay opinion testimony is based on rational perceptions that help the jury understand the witness's testimony and are not based on scientific or specialized knowledge).

[28] State v. Karman, 159 Wn.2d 918, 931, 155 P.3d 125 (2007).

"Due process requires the State to disclose 'evidence that is both favorable to the accused and "material either to guilt or to punishment.'""[29] Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[30] If the defendant could have obtained the information using reasonable diligence, however, there is no Brady violation.[31] Here, defense requested and received Thrower's DOC records, as well as information the State had received from DOC. The parties stipulated to dates during the charging period during which Thrower had been "out of the community," and Thrower himself testified to those periods. Thrower does not demonstrate that any information the State possessed about his DOC records was unobtainable by reasonable diligence on the part of defense counsel or how it was material under Brady. No Brady violation occurred.

Thrower further contends that the prosecutor made statements in closing argument "not based on any evidence in the record," made improper comments on T.W.'s credibility, misstated arguments, and shifted the burden. Defense counsel made several objections during closing argument and rebuttal, all of which the trial court overruled. The prosecutor argued that the reason T.W. gave

---

[29] In re Pers. Restraint of Gentry, 137 Wn.2d 378, 396, 972 P.2d 1250 (1999) (quoting United States v. Bagley, 473 U.S. 667, 674, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (quoting Brady, 373 U.S. at 87)).

[30] Gentry, 137 Wn.2d at 396 (internal quotation marks omitted) (quoting Bagley, 473 U.S. at 682).

[31] In re Pers. Restraint of Benn, 134 Wn.2d 868, 916, 952 P.2d 116 (1998).

for not telling her mother about the abuse "has that ring of truth to it now that you . . . . know a little bit more about Jennifer Wells." The prosecutor made references to inconsistencies in Thrower's testimony and invited the jury to assess Thrower's credibility. Rebutting defense counsel's assertions, the prosecutor argued that a review of investigation interviews shows that some putative inconsistencies "weren't inconsistencies at all."

Prosecutorial misconduct is grounds for reversal where the conduct is both improper and prejudicial.[32] Generally, a prosecutor's comments are prejudicial only where there is a substantial likelihood that they affected the jury's verdict.[33] This court considers the effect of a prosecutor's improper conduct in the context of the full trial, including evidence presented and addressed in argument, the issues in the case, and the court's instructions to the jury.[34] Prosecutors have wide latitude in closing argument to draw reasonable inferences from the evidence and express those inferences to the jury.[35] However, counsel must refrain from expressing a personal opinion about the credibility of witnesses or the guilt or innocence of the accused.[36] Here, the prosecutor's comments were argument and "an explanation of the evidence, not a clear and unmistakable expression of personal opinion."[37] In overruling

---

[32] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).
[33] Monday, 171 Wn.2d at 675.
[34] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).
[35] State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).
[36] State v. Calvin, __ Wn. App. __, 316 P.3d 496, 505 (2013), petition for review filed, No. 89518-0 (Wash. Nov. 12, 2013); State v. Rivers, 96 Wn. App. 672, 674-75, 981 P.2d 16 (1999).
[37] Calvin, 316 P.3d at 505.

defense objections, the trial court reiterated several times that "[t]he jury's instructed that this is argument and they're to confine themselves to the evidence and the law." The prosecutor clearly stated that the State bore the burden of proof, and the trial court correctly instructed the jury. Because Thrower does not show that any of the prosecutor's comments were either improper or prejudicial, we hold that Thrower does not show prosecutorial misconduct.

Finally, Thrower argues that the evidence was insufficient to support his convictions. Thrower points to testimony by T.W. and Kizzier that he contends shows that his conviction is "based on contradictory statements," especially regarding dates the alleged incidents could have happened.

A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[38] We view all facts and reasonable inferences in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt.[39] We defer to the trial court on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[40] Viewed in the light most favorable to the State, the evidence here was such that a rational trier of fact could find the elements of child molestation in the first degree beyond a reasonable doubt. We hold that the evidence was sufficient to support Thrower's convictions.

---

[38] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[39] State v. Embry, 171 Wn. App. 714, 742, 287 P.3d 648 (2012) (citing State v. Yarbrough, 151 Wn. App. 66, 96, 210 P.3d 1029 (2009)), review denied, 177 Wn.2d 1005 (2013).

[40] State v. Raleigh, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010) (citing State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004)).

CONCLUSION

Because Thrower fails to show ineffective assistance or a public trial violation and the further allegations in his statement of additional grounds have no merit, we affirm.

_Leach, J._

WE CONCUR:

_Spearman, C.J._                    _Grosse, J.P.T._