

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70490-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| RAMIRO RODRIGUEZ, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 6, 2014 |

LAU, J. — Ramiro Rodriguez Jr. appeals his conviction for felony harassment and threats to bomb or injure property. He argues that (1) the State presented insufficient evidence to establish that the victim feared the threat to kill would be carried out—an essential element of felony harassment, (2) the trial court violated his right to a public trial by conducting peremptory challenges at a bench conference, and (3) this bench conference violated his right to be present at a critical stage of the proceedings. Because Rodriguez fails to show insufficient evidence, a public trial right violation, or a right to be present violation, we affirm Rodriguez's convictions.

## FACTS

Ramiro Rodriguez moved in with Zulema Barragan and her three children after dating for close to a year. Barragan reported to police that Rodriguez had threatened her several times before she took her children to her cousin's home.

Rodriguez was arrested and charged with threats to bomb or injure property, felony harassment, and taking a motor vehicle without permission. A jury convicted Rodriguez of threats to bomb or injure property and felony harassment. It acquitted him of the taking a motor vehicle offense. Rodriguez appeals.

## ANALYSIS

### Felony Harassment

Rodriguez contends that the State presented no evidence of an essential element that, "the threats to kill actually caused Ms. Barragan to fear Mr. Rodriguez would kill her."[1] Appellant's Br. at 6. He cites selected portions of her testimony to argue the State fell short of its burden to prove this element beyond a reasonable doubt.

To prove felony harassment, the State must prove every element of the charged offense beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. 14; WASHINGTON CONST. art. I, § 3. Felony harassment occurs where the threat to cause bodily injury is a threat to kill the person threatened or any other person. RCW 9A.46.020(2)(b). Among the elements necessary to prove felony harassment is the requirement that the person threatened be put in reasonable fear that the threat to kill will be carried out. RCW 9A.46.020. It is not enough for the State to show the threat caused the victim to suffer some lesser harm, such as the threat of an injury. State v. C.G., 150 Wn.2d 604, 610, 80 P.3d 594 (2003).

---

[1] To the extent Rodriguez claims that sufficient evidence requires Barragan to testify she feared Rodriguez would kill her, we reject that claim. We are unaware of any case authority, and Rodriguez cites none, that so holds.

Circumstantial as well as direct evidence may support a conviction. State v. Bright, 129 Wn.2d 257, 270, 916 P.2d 922 (1996). The nature of the threat depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken. C.G., 150 Wn.2d at 604. Furthermore, in deciding whether a threat occurred, the fact finder can consider the statements in context and not just the literal words. State v. Scherck, 9 Wn. App. 792, 514 P.2d 1393 (1973).

A claim of insufficiency admits the truth of the State's evidence and all inferences that can be drawn from that evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Read in context, there is ample direct and circumstantial evidence to establish Barragan reasonably believed that Rodriguez's multiple threats to kill would be carried out. For example, he threatened her that when people piss him off, "he's already planning their death." Report of Proceedings (May 14, 2013) (RP) at 20. He also told her that if she left him, he knew a guy on the street who would "do a good deed for him." RP at 21. She took that threat to mean he would harm her. Rodriguez also threatened to stab her in the neck if she left him. He threatened to set her apartment on fire. He also said he bruised his former girl friend's infant daughter and busted open his former girl friend's lip. Rodriguez also threatened to see her "lying in a pool of blood, and that he would still fuck [her] because it turns him on." RP at 38. This comment "[f]reaked [her] out." RP at 38. She finally moved her children to her cousin's house because she was afraid he would follow through on his threats. Barragan reported Rodriguez's threats to the police. Her mother described her demeanor as "very very pale," "whole body shaking," tearful and unable to speak. RP at 89.

Rodriguez asserts the present case is like C.G. where the court reversed the felony harassment conviction on the ground of insufficient evidence. C.G., 150 Wn.2d 604. That case bears no similarities to the present case. There, C.G. threatened to kill the school principal, "'I'll kill you Mr. Haney, I'll kill you.'" C.G. 150 Wn.2d at 607. Haney said the threat caused him concern and fear that CG might harm him or someone in the future. Unlike the present case, C.G. involves an isolated threat leveled at a school authority figure by a student. Here, the record shows a domestic relationship marked by verbal abuse and threats to kill that intensified over time. We conclude that there is sufficient evidence to support the essential element—Rodriguez's threats to kill actually caused Barragan to fear Rodriguez would kill her.[2]

Right to a Public Trial[3]

Even though all parts of jury questioning took place in open court, Rodriguez contends that his right and the public's right to a public trial were violated when the attorneys exercised their peremptory challenges during a private bench conference. He asserts this process "occurred privately, outside the public's scrutinizing eyes and ears . . . ." Appellant's Br. at 18. He also claims, "The bench conference was not recorded,

---

[2] We are unpersuaded by Rodriguez's reliance on State v. Kilburn, 151 Wn.2d 36, 84 P.3d 1215 (2004). The case is not controlling.

[3] We note that our Supreme Court recently decided several public trial cases— State v. Slert, No. 87844-7 (Wash. Sept. 25, 2014); State v. Frawley, No. 80727-2 (Wash. Sept. 25, 2014); State v. Koss, No. 85306-1 (Wash. Sept. 25, 2014); and State v. Njonge, No. 86072-6 (Wash. Sept. 25, 2014). However, none of these cases control here.

could not be heard by the public, and no record memorializes which peremptory strike was made, in which order."[4] Appellant's Br. at 19.

Whether the right to a public trial has been violated is a question of law this court reviews de novo. State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012). The Sixth Amendment and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to a public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Bone-Club, 128 Wn.2d 254, 261-62, 906 P.2d 325 (1995). Article I, section 10 provides the additional guarantee that "[j]ustice in all cases shall be administered openly, and without unnecessary delay."

There is a strong presumption that courts are open at all stages of trial. Sublett, 176 Wn.2d at 70. But the public trial right is not absolute. Sublett, 176 Wn.2d at 70. It may be overcome "to serve an overriding interest based on findings that closure is essential and narrowly tailored to preserve higher values." Sublett, 176 Wn.2d at 71.

To determine whether a public trial right applies, Washington courts use the "experience and logic test." Sublett, 176 Wn.2d at 73. The experience prong of the test asks whether the practice, place, or procedure in question has historically been open to the public. Sublett, 176 Wn.2d at 73. The logic prong asks whether public access plays a significant positive role in the functioning of the particular process in question. Sublett, 176 Wn.2d at 73. If both prongs are satisfied, then the court must apply a five-factor test to evaluate whether a proposed closure is constitutional. Bone-Club, 128 Wn.2d at 258-59.

---

[4] After the parties filed their briefs, we granted the State's request to supplement the record consisting of the in-court clerk's notes and record of peremptory, for cause, and joint challenges. The record shows which prospective jurors the court excused.

The right to a public trial applies to voir dire of prospective jurors. Presley v. Georgia, 558 U.S. 209, 213, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010); State v. Wise, 176 Wn.2d 1, 11, 288 P.3d 1113 (2012). In cases where Washington courts found an improper closure during jury selection, the trial court had questioned or dismissed potential jurors in a closed courtroom, chambers, or other private setting outside the public eye. See, e.g., Wise, 176 Wn.2d at 6-7 (partial voir dire in chambers); State v. Brightman, 155 Wn.2d 506, 509, 122 P.3d 150 (2005) (courtroom closed to public during voir dire); State v. Tinh Trinh Lam, 161 Wn. App. 299, 301, 254 P.3d 891 (2011) (interview of juror in chambers) review granted, 176 Wn.2d 1031, 299 P.3d 20 (2013).

However, not every interaction between the court, counsel, and a defendant will implicate the public trial right or constitute a closure if closed to the public. Sublett, 176 Wn.2d at 71. Thus, before we determine whether a public trial violation occurred, we must consider whether the contested procedure constituted a closure at all. Sublett, 176 Wn.2d at 71. A closure occurs when the courtroom is "completely and purposefully closed to spectators so that no one may enter and no one may leave." State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011).

The record here fails to support Rodriguez's assertion that a closure occurred during jury selection. Jury questioning, for-cause challenges, and select individual questioning of prospective jurors on sensitive topics, occurred in open court. Immediately before the parties exercised their peremptory challenges, the court announced the beginning of jury selection:

> COURT: Ladies and gentlemen, the attorneys are going to review their notes and probably for five to ten minutes, and then they're going to come up here, and we're going to go through the selection process.

So, during this time I will allow you to stand, if you want, in the area that you're seated in. And a lot of their notes and memories are based on where you're located in the courtroom. You can talk quietly among yourselves also, but don't get up and start wandering around, or you will really give them fits. And with that, you can talk quietly, if you wish, but you cannot talk about the case of course, and you can stay seated, stand as you wish also. Counsel, when you're ready, come on up and take the time you need.

RP (May 13, 2013) at 119-20.

At a bench conference, counsel disclosed their peremptory challenges to the court. Members of the public saw the dismissed jurors and observed which jurors remained. The court did not announce which counsel had challenged which juror. But the in-court clerk recorded how the parties exercised peremptory and for cause challenges on a document entitled "Judge's List." This list identified the entire jury panel by name and number, the party who made the challenge, and the order in which the challenges occurred. The clerk also recorded which juror, by name and number, the court excused. The clerk's notes show that counsel exercised peremptory challenges between 1:49 p.m. and 2:05 p.m. at the bench conference. The list was filed the same day as part of the public record, and there was no significant delay in the public's access to it. Rodriguez does not dispute it was accessible as a public record.

We conclude the trial court's procedure and timely access to the list discussed above protected both the "core values of the public trial right" and the open administration of justice. Sublett, 176 Wn.2d at 73.

But even assuming a closure, Rodriguez's public trial right claim fails.[5] The exercise of peremptory challenges is not the type of procedure that historically has been conducted in open court. See State v. Love, 176 Wn. App. 911, 918-19, 309 P.3d 1209 (2013) (concluding that the experience and logic test did not support the notion that voir dire challenges are traditionally completed in open court within earshot of the public); State v. Dunn, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014) (concluding that experience and logic do not suggest that the practice of exercising peremptory challenges at clerk's station implicated the defendant's right to a public trial).

Rodriguez fails to show a public trial right violation.

Critical Stage

Rodriguez contends that the bench conference violated his right to be present at a critical stage of the proceedings. Rodriguez argues that because he was not present at the bench conference where the challenges were exercised, he was not able to provide advice to counsel.

A criminal defendant has a fundamental right to be present at all critical stages of a trial. State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). This includes the right to be present during voir dire and the empanelling of the jury. Diaz v. United States, 223 U.S. 442, 455, 32 S. Ct. 250, 56 L. Ed. 500 (1912). The right to be present derives from the confrontation clause of the Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments. Diaz, 223 U.S. at 455. A defendant's presence at jury selection bears, or may fairly be assumed to bear, a relation, reasonably

---

[5] In State v. Smith, No. 85809-8 (Wash. Sept. 25, 2014), our Supreme Court recently held that an evidentiary sidebar conference does not implicate the public trial right under the experience and logic test.

-8-

substantial, to his opportunity to defend because it will be in his power to give advice or suggestion or even to supersede his lawyers altogether. Irby, 170 Wn.2d at 883. The right attaches at the time the jury is empanelled. Irby, 170 Wn.2d at 883.

Rodriguez claims Irby controls. That case is distinguishable. There, the trial court e-mailed the State and defense counsel to discuss reasons for excusing prospective jurors. But the defendant was in custody and could not provide input to counsel. Irby, 170 Wn.2d at 878-79. The court held that this violated the defendant's right under the due process clause of the Fourteenth Amendment to be present at a critical stage of trial and article I, section 22 of the state constitution to "'appear and defend in person.'" Irby, 170 Wn.2d at 884-85.

Unlike in Irby, here, Rodriguez was present in court and able to consult with counsel about selecting the jury before the bench conference. We find no violation of Rodriguez's right to be present for jury selection.

For the reasons discussed above, we affirm Rodriguez's convictions.

_____

WE CONCUR:

_____        _____
Spearman, C.J.                         Appelwick, J.